# CAUSE NO. 15-2209
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

CHEVRON MINING INC.,

                        Plaintiffs and Appellees,

v.

UNITED STATES OF AMERICA, ET AL.,

                        Defendants and Appellants.

## BRIEF OF AMICUS CURIAE STATE OF MONTANA

On Appeal from the United States District Court
for the District of New Mexico (Armijo, C.J., No. 1:13-cv-00328)

TIMOTHY C. FOX
Montana Attorney General
ALAN JOSCELYN
Chief Deputy Attorney General
DALE SCHOWENGERDT
Solicitor General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone:  406-444-2026
Fax:  406-444-3549
alanjoscelyn@mt.gov
dales@mt.gov

ATTORNEYS FOR AMICUS
CURIAE STATE OF MONTANA

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE
AND SOURCE OF AUTHORITY TO FILE ......................................................... 1

ARGUMENT ........................................................................................................ 1

I.    THE DISTRICT COURT, AND THE DISTRICT COURT
IN *FRIEDLAND,* RELIED ON BY THE DISTRICT COURT
BELOW, ERRED IN FINDING THE U.S. NOT TO BE
AN "OWNER." ........................................................................................... 1

II.   WHY IT MATTERS TO THE STATE: FROM THE PERSPECTIVE
OF THE STATE, IT IS UNFAIR NOT TO CONSIDER THE U.S AN
OWNER FOR PURPOSES OF CERCLA ................................................... 5

CONCLUSION ..................................................................................................... 8

CERTIFICATE OF COMPLIANCE ................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*Commander Oil Corp. v. Barlo Equip. Corp.*,
   215 F. 3d 321 (2d Cir. 2000) ..................................................................................2

*United States v. Friedland*,
   152 F. Supp. 2d 1234 (D. Colo. 2001) ...................................................... passim

## OTHER AUTHORITIES

Code of Federal Regulations
   Tit. 40, § 302.4 ........................................................................................................5

Federal Rules of Appellate Procedure
   Rule 29 .....................................................................................................................1

United States Code
   Tit. 42, § 9601 ........................................................................................................3
   Tit. 42, § 9607 (_____) ...........................................................................................7

United States Constitution
   Art. I, § 8, cl. 17 ......................................................................................................6
   Art. IV, § 3, cl. 2 .....................................................................................................6

Montana Code Annotated
   § 82-4-301 (Montana Metal Mine Reclamation Act) ...........................................6

George Cameron Coggins and Robert L. Glicksman,
   *Public Natural Resources Law 2d*, Thomson Reuters (2015) .............................6

C. Perry Patterson,
   *The Relation of the Federal Government to the Territories and
   the States in Landholding,* 28 Texas L.R. 43 (1949) ...........................................6

P. J. Proudhon
   *What is Property, an Inquiry into the
      Principle of Right & Government* (1840) .......................................................3

### STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE AND SOURCE OF AUTHORITY TO FILE

Amicus curiae is the State of Montana. Its interest in this case is the consequences of the decision below with respect to federal land policy and with respect to productive enterprise conducted on federal public lands within the State. The source of Amicus Curiae's right to file this brief is Fed. R. App. P. 29.

### ARGUMENT

**I.   THE DISTRICT COURT, AND THE DISTRICT COURT IN *FRIEDLAND,* RELIED ON BY THE DISTRICT COURT BELOW, ERRED IN FINDING THE U.S. NOT TO BE AN "OWNER."**

The District Court below relies heavily on the 2001 opinion of the U.S. District Court, District of Colorado in the *Friedland* case ("The seminal case considering whether the United States is an owner under the [Comprehensive Environmental Response, Compensation and Liability Act] CERCLA of land on which another party holds unpatented mining claims is *United States v. Friedland*, 152 F. Supp. 2d 1234, 1239 (D. Colo. 2001)"). Dkt. 111 at 14.

Both courts struggled with the concept of ownership and what it means, but their struggles produced the wrong conclusion in this case.

In *Friedland*, at 1242, 43, the Court said:

> The phrase "owner"--tautologically defined by Congress as "any person . . . owning" a facility--is a paradigm of neither clarity nor precision, much less a model of legislative draftsmanship.
>
> . . . .
>
> My analysis of the term "owner," as set forth in § 9607(a), commences by "giv[ing] the term its ordinary or natural meaning." [citation omitted]. . . . Yet as the Second Circuit noted in *Commander Oil Corp. v. Barlo Equip. Corp.,* 215 F. 3d 321 (2d. Cir.2000), "the term 'owner' has no natural meaning that can resolve the present dispute."
>
> . . . .
>
> According to Webster's dictionary, an owner is "one that has the legal or rightful title whether the possessor or not." [Cite omitted.] Black's law Dictionary, however, equivocates between titular and possessory ownership, defining an owner variously as "[o]ne who has the right to possess, use, and convey something," and as "[o]ne who has the primary or residuary title to property." [Cite omitted.] As the Second Circuit noted in *Barlo*, "this definition's ambiguity comes as no surprise . . . ownership--and its attendant concept 'property'--has limited inherent content. [Cite omitted.] Furthermore, courts have supplied virtually no consistent guidance as to which property rights define ownership. [Citation omitted]

The court below begins its analysis by referencing this struggle by the *Friedland* court, and goes on to rely on it: "This Court agrees with Friedland's focus on who owns which strands of the bundle of property rights in determining whether the United States is an owner." Dkt. 111 at 17.

These courts are certainly not the first writers to explore the concept of property and ownership. An early and still useful explanation of property is

provided by P.J. Proudhon in his 1840 First Memoir in "What is Property" (translated from the French by Benj. R. Tucker) in which he explains:

> There are different kinds of property: 1. Property pure and simple, the dominant and seigniorial power over a thing; or as they term it, *naked property*. 2. *Possession*. "Possession," says Duranton, "is a matter of fact, not of right." Toullier: "Property is a right, a legal power; possession is a fact." The tenant, the farmer, the *commandite'*, the usufructuary, are possessors; the owner who lets and lends for use, the heir who is to come into possession on the death of usufructuary, are proprietors.

While the explanation reflects the author's times, it is nonetheless a clear explanation of a concept which eluded both the court below and the *Friedland* court, but was obviously understood by Congress in the design of CERCLA (42 U.S.C. § 9601, *et seq.* (1980)). By including both the terms "owner" and "operator", Congress included both of Proudhon's kinds of property. "Owner" is proprietor, or, as described by the *Friedland* court, the holder of bare legal title, and "operator" is possessor.

The *Friedland* court specifically cites authority to the effect that "owner" must mean something different than "operator":

> Imposing owner liability on the basis of site control threatens to make owners of all operators and surplusage of most operator liability. *See Castlorock,* 871 F. Supp. at 367 ("The test for 'ownership' liability under CERCLA . . . has become similar to [the] test for 'operator' liability under CERCLA."). Because we strive to avoid redundancy in our interpretation of statutes, *see, e.g., Exxon Corp.* 475 U.S. at 369-370, 106 S. Ct. 1103, 89 L.Ed.2d 364, we believe that site control alone is an improper basis for the imposition of owner liability.

3

*Friedland,* at 1243-44.  But the court then proceeds to find the United States is not an owner precisely because the mining claimants have the exclusive possessory interest in the land, i.e., "site control," and the United States does not, and even though the United States retains the perquisites of legal title, *i.e.*, proprietorship *Id.* at 1245-46.

> [T]hus, federal law permits private parties to acquire exclusive possessory interests in federal land for mining purposes . . . .  Until a patent issues, the United States retains paramount rights and interests in the Federal lands under the claim, and maintains the authority to regulate the uses of those lands.  [Citation omitted]  . . . . Furthermore, although the United States maintains broad powers over the terms and conditions upon which the public lands can be used, leased, and acquired, the claimant nevertheless enjoys a valid, equitable, possessory title . . . .  Because unpatented mining claimants possess vested property rights . . . I find that the United States is not an "owner" in the fullest sense of the term . . . .  Finally, the United States is not allowed to exclude individuals from the land and many only regulate mining activities in the national forests in order to protect surface resources.  Therefore, I find it inappropriate to deem the United Sates an "owner" for purposes of CERCLA liability.

The court below adopted the *Friedland* rationale completely and uncritically:

> Though various courts, including the courts in *Weiss, Curtis-Nevada Mines*, and *Etcheverry* describe the nature of the United States' property interests more or less forcefully, ultimately, this Court is persuaded that Friedland's description is accurate.  In sum, the Court does not agree that Friedland improperly discounted the United States' interests in land on which third parties hold unpatented mining claims.

Dkt. 111 at 21, 22.

4

If "owner" in 42 U.S.C. § 9607 is to have any meaning independent of "operator" in the facts before the Court, it must include that person who is the proprietor but not the possessor. In other words, that person who owns that interest which is inaccurately described in *Friedland* (at 1242) as "bare legal title." The United States in this instance.

II. **WHY IT MATTERS TO THE STATE: FROM THE PERSPECTIVE OF THE STATE, IT IS UNFAIR NOT TO CONSIDER THE U.S AN OWNER FOR PURPOSES OF CERCLA.**

The District Court and the *Friedland* opinion it relies on, both say, in essence, that in this mining context it is unfair to consider the U.S. an owner for CERCLA purposes. But from the perspective of the State, the exact opposite is true. Consider:

- Every mine produces waste materials such as waste rock and tailings;[1]

- The United States was fully aware of this fact when, in 1872, it created the system, the General Mining Law, whereby claimants have a limited ownership of lands valuable for mining, and the U.S. remains underlying owner of those lands;

- When CERCLA was enacted in 1980, one result, because of the broad and comprehensive definition of "hazardous substances" (*See,* 40 CFR § 302.4), which includes elements such as copper, nickel, silver, routinely found in mineral deposits, was to give

---

[1] Tailings are waste materials resulting from the washing or concentration of ground ores.

5

the U.S. Environmental Protection Agency (EPA) the ability to declare every mine site a so-called Superfund site.

This is problematic from the State's point of view. The mining law is perhaps the last vestige of the initial premise of public land policy that land should be disposed of to persons likely to make productive use of it. As explained with vigor and authority by C. Perry Patterson in *The Relation of the Federal Government to the Territories and the States in Landholding,* 28 Texas L.R. 43 (1949), the original intention of the States in creating and adopting the Enclaves and Property Clauses of the Constitution (U. S. Const., Art. I, § 8, cl. 17, and Art. IV, § 3, cl. 2) was to execute the compact between the federal government and the states whereunder public lands were to be disposed of.

As further explained by Coggins and Glicksman in their treatise on Public Natural Resources Law, (*Public Natural Resources Law 2d*, Thomson Reuters (2015)), since the 1890's the policy of the federal government regarding federal lands has gone from disposition (or, per the treatise, privatization) to retention, and recently (in a historic context), preservation. Coggins and Glicksman, § 2.1.

The western states which have large expanses of public lands, have benefited from the general mining law, by the productive enterprises thereby enabled. Those states have in turn taken responsibility by enacting their own mine reclamation laws, e.g., for Montana, *see,* Montana Metal Mine Reclamation Act, Mont. Code Ann. § 82-4-301, *et seq.* The enactment of CERCLA, with its all-

6

encompassing definition of what constitutes a hazardous substance, triggered the previously unprecedented discretion in EPA to declare and administer Superfund sites. That had the unintended effect of making potential Superfund sites out of mine sites because waste rock, a necessary incident of mining, invariably contains various metallic elements also named in CERCLA as hazardous substances. This enabled EPA to impose retroactive liability for activities which the United States' general mining law was enacted to promote, and which have been of substantial economic benefit to the states.

There are and will be cases in which Superfund designation is appropriate to address releases from mine sites which predated modern regulations, or where reclamation has failed. The possibility, however, that a productive mine could be turned into a costly liability, postmining, by an administrative decision under CERCLA, creates an economic risk that will discourage investment by those in the mining business.

That risk is only heightened by the perception that the United States can exempt itself from the economic consequences of a decision to turn a mine into a Superfund site notwithstanding its history of involvement in the creation and operation of the mine, including reclamation. States such as Montana, with significant public land within their borders, will bear the burden as potential miners

apprehend the imposition of after-the-fact, clean-up costs imposed under CERCLA.

Even in those cases where Superfund designation is appropriate, nobody's interests are served by finding the U.S. not to be an "owner" when in fact it is an owner.

## **CONCLUSION**

The District Court's conclusion that the United States is not an "owner" for purposes of 42 U.S.C. § 9607 is incorrect and should be overturned.

Respectfully submitted this 26th day of January, 2016.

> TIMOTHY C. FOX
> Montana Attorney General
> 215 North Sanders
> P.O. Box 201401
> Helena, MT 59620-1401
>
>
> By: _____
>     DALE SCHOWENGERDT
>     Assistant Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the clerk of the Court of Appeals for the Tenth Circuit, by using the Court's cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the Court's cm/ecf system.

Dated:  January 26, 2016      /s/ *Dale Schowengerdt*
                                                      DALE SCHOWENGERDT
                                                    Solicitor General
                                                    Amicus Curiae States of Montana

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(bB), I certify that this principal brief is printed with a proportionately spaced Times New Roman text typeface of 14points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 1,853 words, excluding certificate of service and certificate of compliance.

                                               */s/ Dale Schowengerdt*
                                               DALE SCHOWENGERDT

CAUSE NO. 15-2209

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

CHEVRON MINING INC.,

                              Plaintiff-Appellant,

  v.

UNITED STATES OF AMERICA, ET AL.,

                              Defendants-Appellees.

**BRIEF OF AMICUS CURIAE STATE OF MONTANA
IN SUPPORT OF APPELLANT AND SUPPORTING REVERSAL**

On Appeal from the United States District Court
for the District of New Mexico (Armijo, C.J., No. 1:13-cv-00328)

                              TIMOTHY C. FOX
                              Montana Attorney General
                              ALAN JOSCELYN
                              Chief Deputy Attorney General
                              DALE SCHOWENGERDT
                              Solicitor General
                              215 North Sanders
                              P.O. Box 201401
                              Helena, MT 59620-1401
                              Phone:  406-444-2026
                              Fax:  406-444-3549
                              alanjoscelyn@mt.gov
                              dales@mt.gov

                              ATTORNEYS FOR AMICUS CURIAE
                              STATE OF MONTANA

**CERTIFICATE OF VIRUS SCANNING AND PRIVACY REDACTIONS**

In accordance with the Court's CM/ECF User's Manual and Local Rules I hereby certify that a copy of the foregoing has been scanned for viruses with Trend Microsoft Endpoint Security, and is free of viruses according to that program. In addition, I certify that all required privacy redactions have been made and the electronic version of this document is an exact copy of the written document to be filed with the Clerk.

                                               */s/ Dale Schowengerdt*
                                               DALE SCHOWENGERDT

# **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the clerk of the Court of Appeals for the Tenth Circuit, by using the Court's cm/ecf system.

Participants in the case who are registered cm/ecf users will be served by the Court's cm/ecf system.

Dated:   January 29, 2016          /s/  Dale Schowengerdt
                                   DALE SCHOWENGERDT
                                   Solicitor General
                                   Amicus Curiae State of Montana